# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| **WILLIE COOLEY**, | CASE NO. 07cv1872-DMS(POR) |
| Petitioner, | **ORDER LIFTING STAY AND DENYING 28 U.S.C. § 2254 PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | |
| **J. D. HARTLEY, WARDEN**, | |
| Respondent. | |

Petitioner Willie Cooley ("Cooley"), a state prisoner serving an indeterminate sentence of 14-years-to-life following his January 1991 conviction by a jury of attempted murder, proceeding *pro se*, seeks a 28 U.S.C. § 2254 writ of habeas corpus. He alleges the Board of Parole Hearings ("Board") violated his Fourteenth Amendment due process rights in denying him parole at his initial suitability hearing on July 13, 2005, purportedly without evidence to support the denial. Respondent filed an Answer. (Dkt No. 11.) Cooley filed no Traverse. By Order entered November 25, 2008, this case was reassigned from the Eastern District of California to the undersigned visiting judge. (Dkt No. 12.) By Order entered March 13, 2009, the Court stayed the matter in anticipation of the Ninth Circuit's *en banc* decision on rehearing of Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008), *reh'g en banc granted by* 527 F.3d 797 (9th Cir. 2008), *vacated by* Hayward v. Marshall, -- F.3d --, 2010 WL 1664977 (9th Cir. (Cal.) Apr. 22, 2010) (*en banc*). (Dkt No. 14.) Among other things, the Hayward

*en banc* decision has answered the questions in this Circuit "whether federal constitutional law imposes on the states a requirement for some quantum of evidence to support a state's denial of parole," and "whether, even if there is no general federal quantum of evidence requirement, applicants for parole in California, under the state's current laws, may obtain federal habeas review of whether there is 'some evidence' supporting a negative parole decision." Hayward, 2010 WL 1664977 ("Hayward Op." or "Opinion") at *1. The Court accordingly now lifts the stay in this case and reaches the merits of Cooley's due process claim, applying the clarified review standards..

Respondent concedes Cooley's claim is exhausted and there is no time limitation or other bar to reaching the merits of the Petition. (Ans. Dkt 11, 2:26-27, 3:3-5.) Cooley's Petition articulately presents his claim, with citations to appropriate authority, and the Court finds the issues can all be resolved through application of the clarified standards to the fully-developed evidentiary record in his case, without a need for additional briefing. His request for appointment of counsel in the Petition is therefore **DENIED**. (Dkt No. 2, 17:21.) In consideration of pertinent portions of the record and controlling authority, for the reasons discussed below, the Petition is **DENIED**.

## I. BACKGROUND

Federal courts presume the correctness of a state court's determination of factual issues. 28 U.S.C. § 2254(e)(1). The parties do not dispute the accuracy of the factual summary by the Los Angeles County Superior Court in its January 17, 2007 decision denying Cooley habeas relief from the Board's July 13, 2005 denial of parole, the only reasoned state court decision reaching the merits of his federal claim. (Dkt No. 2 Exh., Pet. pp. 18-19; Dkt No. 11-5, In re Cooley, Case No. BH003974, pp. 2-4.) Cooley does not appear to have sought habeas relief in the Court of Appeal, and the California Supreme Court summarily denied his habeas petition on October 17, 2007. (Dkt No. 11-11, Ans. Exh. D.)

> Petitioner was received into custody on January 25, 1991 for a conviction of attempted first degree murder with use of a firearm and for non-commitment offense convictions of burglary and discharge of a firearm. The transcript of the suitability hearing reflects that petitioner "received a term of 14 years to life" with a minimum eligible parole date of August 8, 2005. The record reflects that on December 10, 1988, petitioner, armed with an Uzi machine gun, and four crime partners, armed with handguns and a shotgun, forced their way into the victims' apartment. When petitioner entered the apartment, he shouted,

> "Five Deuce Broadway," the name of a gang. Petitioner and his crime partners ransacked the apartment and fired at the victims who fled to seek safety. One of the petitioner's crime partners kicked a female victim in the stomach. The record reflects that petitioner and one of the victims had an argument two hours earlier over petitioner's car blocking the driveway so that the victim was unable to park at the apartment building. When police arrived, they found the entire apartment riddled with bullet holes with none of the intended victims injured by gunshot.

(Dkt No. 2, p. 18; *see also* Dkt No. 11-3, pp. 42-47, 61, People v. Cooley, Case No. BO57739, summarizing on direct review additional factual detail and modifying two gang-related components of the conviction and sentence, but affirming in all other respects.)

In denying habeas relief, the Superior Court found the record contains "some evidence" to support the Board's determination Cooley was unsuitable for parole, applying California's parole statue, regulations, and decisional law. "The Board was acting within its authority when it considered petitioner's positive preconviction and postconviction factors, yet concluded that he would pose an unreasonable threat to public safety." (Dkt No. 2, pp. 18-19, *citing* CAL. PENAL CODE § 3041(b), CAL CODE REGS., tit. 15, § 2401.)

Cooley contends in his federal Petition the "findings in support of the Board's decision that petitioner pos[]es a current unreasonable threat to public safety is [*sic*] not supported by 'some evidence' possessing 'some indicia of reliability,' and the state court's determination to the contrary is based on an unreasonable determination of the facts in light of the evidence presented during the parole hearing and amounted to an unreasonable application of clearly established Supreme Court precedent." (Dkt No. 2, Pet. p. 9, *citing* Superintendent v. Hill, 472 U.S. 445, 455 (1985) (developing a due process "some evidence" standard in the context of prison disciplinary hearings).)

Respondent "denies that Cooley is entitled to federal habeas relief under 28 U.S.C. § 2254 because the state court decisions were not contrary to, or an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or based on an unreasonable determination of the facts." (Dkt No. 11, 3:6-9.) In addition, Respondent "denies that Cooley has a federally protected liberty interest in parole and, therefore, alleges that he has not stated a federal question invoking this court's jurisdiction." (Id. 3:10-11.) Respondent further argues "the Supreme Court has not clarified the methodology for determining whether a state has created a federal

liberty interest in parole" (Id. 3:11-13), and represents that in the absence of federal due process rights associated with parole denials, Cooley is not entitled to relief because there is "no federal remedy for alleged violations of state, as opposed to federal, law" (Id. 4:10-14, *citing* 28 U.S.C. § 2254(d)). Respondent also argues Cooley has not shown the state court result was based on an unreasonable determination of the facts in light of the evidence presented, the only other basis on which federal habeas relief can be granted. (Id. 8:3-13.)

## II.   DISCUSSION

### A.   Legal Standards For Federal Habeas Relief

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas courts are bound by a state's interpretation of its own law. Estelle v. McGuire, 502 U.S. 62, 68 (1991) (federal courts may not reexamine state court determinations on state-law questions); Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990) (federal courts "have no authority to review a state's application of its own laws"); Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989) ("errors of state law do not concern us unless they rise to the level of a constitutional violation").

Federal habeas petitions filed after April 24, 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Lindh v. Murphy, 521 U.S. 320, 322-23 (1997). AEDPA establishes a " 'highly deferential standard for evaluating state-court rulings,' " requiring "that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002), *quoting* Lindh, 521 U.S. at 333 n.7. The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Federal habeas relief is warranted only if the result of a claim adjudicated on the merits by a state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see* Bell v. Cone, 535 U.S. 685, 694 (2002). A state court's adjudication on the merits "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of

the evidence presented in the state court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). A federal court applies AEDPA standards to the "last reasoned decision" by a state court. <u>Campbell v. Rice</u>, 408 F.3d 1166, 1170 (9th Cir. 2005); *see* <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same claim rest upon the same ground").

### B. Due Process And Review Standards Applicable To Denials Of Parole

A due process claim raises two questions: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989) (citations omitted). "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it" arising either from "the Due Process Clause itself " or from "the laws of the State." <u>Id.</u> (citation omitted).

An *en banc* panel of the Ninth Circuit recently clarified the standards federal habeas courts must apply in reviewing California prisoners' challenges to parole denials on due process grounds.[1] <u>Hayward</u>, 2010 WL 1664977 (9th Cir. Apr. 22, 2010) ("<u>Hayward</u> Op." or "Opinion"). The Opinion acknowledged that both the Ninth Circuit and the California Supreme Court "have been engaged in modification of the law to determine what limits there are on denial of parole." <u>Id.</u> at *3. "Hayward's appeal addresses what if anything the federal Constitution requires as a condition of denial of parole." <u>Hayward</u> Op. at *3, *citing* 28 U.S.C. § 2254(a).

In particular, one question presented was whether "federal constitutional law imposes on the states a requirement for some quantum of evidence to support a state's denial of parole." <u>Hayward</u> Op. at *1. The Opinion distinguished the deprivation of good time credits earned by prisoners while incarcerated, creating "a liberty interest of the most fundamental sort," from denial of release on parole, a decision entailing the "discretionary assessment of a multiplicity of imponderables." <u>Id.</u> at *7. "The proposition that the Supreme Court has required 'some evidence' of anything derives from

---

[1] In addition to clarifying due process issues, the <u>Hayward</u> *en banc* court held petitioners need a Certificate Of Appealability in order to appeal a district court's Order denying a writ of habeas corpus arising from the state's denial of parole. <u>Hayward</u> Op. at *5.

a misunderstanding of the differences between 'good time' and 'parole.' " Id. at *6, n.44 ("*Compare Superintendent v. Hill*, 472 U.S. 445 (1985) (assessing a Massachusetts good time statute) *with Board of Pardons v. Allen*, 482 U.S. 369 (1987) (assessing the Montana parole system) *and Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979) (assessing the Nebraska parole system)"). The Hayward majority held: "in the absence of state law establishing otherwise, there is no federal constitutional requirement that parole be granted in the absence of 'some evidence' of future dangerousness or anything else." Hayward Op. at **8-11 ("We overrule any decisions suggesting that the federal constitution imposes a requirement of 'some evidence' of future dangerousness without regard to state law").[2] Nevertheless:

> Although the due process clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law may supply a predicate for that conclusion. "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state *statutes* may create liberty interests in parole release that are entitled to protection under the Due Process Clause."

Hayward Op. at *10, *adding emphasis and quoting* Allen, 482 U.S. at 371.

Under California law, prisoners subject to indeterminate life sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement." In re Dannenberg, 34 Cal.4th 1061, 1078 (2005). "[L]ife inmates' actual confinement periods within the statutory range are decided by [the Board of Prison Terms]." Id.  The Governor may review the Board's parole decisions and is authorized to reverse or modify them, applying the same standards as the Board applies. CAL. CONST art. V, § 8, subd. (b); CAL. PENAL CODE § 3041.2.

The manner in which the Board is to make parole decisions is addressed in CAL. PENAL CODE § 3041 and implementing regulations. "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel [or the Governor] the prisoner will pose an unreasonable risk of danger to society if released from prison." CAL. CODE

---

[2] "To the extent our prior decisions including Biggs v. Terhune[, 334 F.3d 910 (9th Cir. 2003)], Sass v. California Board of Prison Terms[, 461 F.3d 1123 (9th Cir. 2006)], Irons v. Carey[, 505 F.3d 846, 850-51 (9th Cir. 2007)] and our panel decision in this case might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release, we reject that reading and overrule those decisions to the extent they may be read to mean that." Hayward Op. at *5.

REGS., tit. 15, §§ 2281(a), 2402(a).[3] The Board "must apply detailed standards when evaluating whether an individual is unsuitable for parole on public safety grounds." Dannenberg, 34 Cal.4th at 1096 n. 16; *see also* In re Rosenkrantz, 29 Cal.4th 616, 677 (2002) (the Board's discretion is circumscribed by the requirement "the decision must reflect an individualized consideration of the specific criteria and cannot be arbitrary and capricious"). The regulations guide the manner in which the evidence is to be considered.

> All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during, and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

CAL. CODE REGS., tit. 15, §§ 2281(b), 2402(b).

The Board and Governor must consider both circumstances tending to show unsuitability[4] and circumstances tending to show suitability [5] in the particular case. *See* CAL. CODE REGS., tit. 15, § 2401 ("A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d)," but "[a] parole date shall be denied if the prisoner is found unsuitable for parole under Section

---

[3] "The two sections are identical." In re Lawrence, 44 Cal.4th 1181, 1202 n.5 (2008). CAL.CODE REGS., tit. 15, § 2402 provides the Parole Consideration Criteria And Guidelines For Life Prisoners applicable to murderers whose crime was committed "on or after November 8, 1978."

[4] Guideline circumstances tending to show unsuitability include: (1) the heinousness or cruelty of the commitment offense, considering such factors as multiple victims "attacked, injured or killed in the same or separate incidents;" "the victim was abused, defiled or mutilated during or after the offense;" the offense "was carried out in manner which demonstrates an exceptionally callous disregard for human suffering;" (2) the prisoner's previous record of violence, "particularly if the prisoner demonstrated serious assaultive behavior at an early age;" (3) unstable social history in relationships with others; (4) psychological factors; and (5) institutional behavior engaging in serious misconduct while incarcerated. CAL. CODE REGS. § 2402(c)

[5] Guideline circumstances tending to show suitability include: (1) no juvenile record; (2) stable social history; (3) signs of remorse, such as performing acts or giving "indications he understands the nature and magnitude of the offense;" (4) the crime was the result of significant stress; (5) lack of any significant history of violent crime; (6) the prisoner's age reduces the probability of recidivism; (7) realistic plans for the future upon release, or development of marketable skills usable upon release; and (8) institutional behavior "indicating an enhanced ability to function within the law upon release." CAL. CODE REGS. § 2402(d).

2402(c)"). The Board must consider all pertinent information available associated with the codified factors in making its parole decision. *See* Dannenberg, 34 Cal.4th at 1086. However, "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th 1181, 1212 (2008). A decision denying parole must articulate reasons that are both grounded in evidence *and* rationally related to the statutory public danger basis for denial. In re Roderick, 154 Cal.App.4th 242, 264 (2007), *citing* In re Lee, 143 Cal.App.4th 1400, 1409 (2006) ("Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety"). "[I]t is not enough that there is some evidence to support the factors cited for the denial; that evidence must also rationally support the core determination required by the statute before parole can be denied, *i.e.*, that a prisoner's release will unreasonably endanger public safety." Id. at 263.

The Hayward court summarized: "The California parole statute provides that the Board of Prison Terms 'shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual.' " Hayward Op. at *10, *quoting* CAL. PENAL CODE § 3041(b).

> As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, supports the inference of dangerousness. Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

Hayward Op. at *10 (footnotes omitted), *quoting* Lawrence, 44 Cal.4th at 1210, 1213-14.

"The crucial determinant of whether the prisoner gets parole in California is 'consideration of the public safety.' " Hayward Op. at *10, *citing* Lawrence, 44 Cal.4th 1181 *and* In re Shaputis, 44 Cal.4th 1241 (2008) ("[T]he California Supreme Court established in [those] two decisions . . . that

as a matter of state law, 'some evidence' of future dangerousness is indeed a state *sine quo non* for denial of parole in California," creating a liberty interest). "[S]ome evidence of future dangerousness is a necessary predicate for denial of parole." Id. at *3; *see also* Hayward Concurring And Dissenting Op. at *17.  The court emphasized the "right in California to parole in the absence of some evidence of one's future dangerousness to the public arises from California law." Hayward Op. at *11.  The *en banc* majority declined to decide "whether the California parole scheme establishes a predicate for imposing [the liberty interest] as a matter of federal constitutional law." Id. ("State law already does what Hayward would have federal constitutional law do," so that the court found it need "not decide whether a right arises in California under the United States Constitution to parole in the absence of some evidence of future dangerousness"). "There was some evidence of future dangerousness, so [Hayward's] parole was [properly] denied, and the district court correctly denied the writ." Id. at *1.

While judicial review of a parole denial is "extremely deferential," the purpose of the review is to ensure the result was supported by "some evidence." Hayward Op. at *10; *see also* Rosenkrantz, 29 Cal.4th at 660; Lawrence, 44 Cal.4th at 1212 ("when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings") *citing, inter alia,* Rosenkrantz, 29 Cal.4th at 658 *and* Dannenberg, 34 Cal.4th at 1071.  Thus, a reviewing court need only verify that evidence of the factors recited as the reasons for denial supports the "core determination" the prisoner would pose a public danger if released.  "Under the statute and governing regulations, the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public." Lawrence, 44 Cal.4th at 1212.  California's "some evidence" standard therefore requires a rational nexus between the prisoner's "current circumstances" and his or her current dangerousness in order "to provide the 'modicum of evidence' necessary" for a legitimate denial of parole. Id. at 1227 (setting aside the Governor's action in vacating the Board's grant of parole through reliance on the "immutable and unchanging" circumstances of the "egregious" commitment offense, on grounds that decision was not supported by "some evidence" of the prisoner's current

dangerousness).

In summary, the Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits states from depriving persons of protected liberty interests without due process of law. As construed by the Ninth Circuit in <u>Hayward</u>, California has created by statute a liberty interest in the release on parole of eligible prisoners serving indeterminate life sentences cognizable on federal habeas review. Denial of parole must comport with the state's "some evidence" criteria linking the prisoner's current circumstances to the ultimate finding of present dangerousness. The <u>Hayward</u> Opinion articulates the standard for federal habeas review of state court decisions upholding parole denials:

> Since the "some evidence" requirement applies without regard to whether the United States Constitution requires it, we in this case, and courts in this circuit facing the same issue in the future, need only decide **whether the California judicial decision approving the governor's decision rejecting parole was an "unreasonable application" . . . of the California "some evidence" requirement, or was "based on an unreasonable determination of the facts in light of the evidence."**

<u>Hayward</u> Op. at *11, *quoting* 28 U.S.C. §§ 2254(d)(1)-(2); *see also* <u>Hayward</u> Concurring and Dissenting Op. at *17 (the "some evidence" rule must be applied in light of the deference owed to the factual determinations of state courts under AEDPA).

**C.  The State Court Reasonably Applied The California "Some Evidence" Requirement And Reasonably Determined The Facts In Light Of The Evidence In Approving The Board's Denial Of Parole**

In the only reasoned state court decision addressing the merits of Cooley's due process claim, the Superior Court found evidentiary support in the record for the Board's determination Cooley was not yet suitable for parole due to his continuing public safety risk, identifying discrete factors it articulated in support of the denial. (Dkt No. 11-5, pp. 1-4.) That support included the factual findings associated with the commitment offense "that multiple victims were attacked, the offense was committed in a dispassionate and calculated manner, and the motive was very trivial in relation to the offense." (Dkt No. 2, p. 18, *citing* CAL. CODE REGS., tit. 15, § 2402(c)(1)(A), (B), & (E).) "The record further reflects that the Board also relied on several additional factors in denying petitioner parole at this time, and there is some evidence to support that decision." (<u>Id.</u>) These included the

unsuitability factor of "petitioner's previous record of violence, specifically a conviction for a battery on a police officer," inadequate post-parole plans, and his 2004 psychological evaluation stating Cooley was not ready for parole, had no genuine remorse, and was only rated "a moderate to moderately low risk of violence based on a 'questionable' assumption that petitioner reported accurately." (Id. pp. 18-19; *see* Dkt No. 11-4, p. 28.)

The nearly 100-page hearing transcript is provided in Exhibits to the Answer. (Dkt Nos. 11-2, pp. 32-102, 11-3, pp. 1-29.) Supporting documentation is also provided. (Dkt Nos. 11-3, 11-4.) The Board conducted the suitability hearing interactively with Cooley and his counsel regarding his attitude toward his commitment offense, prior criminal and social history, parole plans, letters of support, discipline and progress since his prison commitment, counselors' reports, and his psychological evaluation. After also hearing from the District Attorney's representative in attendance, the Board denied parole for two years, finding Cooley not suitable because he "would pose an unreasonable risk of danger to society or threat to public safety if released from prison." (Dkt No. 11-3, 23:10-16.) The Board acknowledged several positive factors in Cooley's favor, including: documentation of his participation in numerous therapy and self-help activities individually recited on the record; he earned both a GED and a true high school diploma while in prison; he participated in vocational training with good work and skill reports; and the record contained more than a dozen laudatory chronos, of which two were read into the record. (Dkt No. 11-3, pp. 26-27; Dkt No. 11-2, pp. 83-86, 89-90, 97-100.) Nevertheless, the Board concluded the public safety risks warranted denial of parole, on the recited grounds: the callous manner in which the crime was committed, with multiple victims and for trivial motive; his prior record of assaultive behavior, unsatisfactory prior performances on probation, and renewed criminality, with specific examples recited on the record; his receipt of eleven "128 counseling chronos," most recently in June 2004, and receipt of three "115 disciplinary reports," most recently in July 2002 for possession of marijuana (Dkt No. 11-2, pp. 88-89); the evaluations and conclusions from his 2004 psychological evaluation; and unacceptable post-release employment plans. (Dkt No. 11-3, pp. 23-26.)

Significantly, Cooley's fourteen-page mental health evaluation from September 2004, about ten months before his suitability hearing, was not supportive of parole. (Dkt No. 11-4, pp. 18-31.)

1 The evaluator, forensic psychologist Elaine L. Mura, Ph.D., found Cooley "presents with both
2 positive and negative factors for parole," summarizing both. (Id., p. 30.) She rated his probability for
3 parole success as "guarded at this time." (Id., p. 29.) She reported Cooley's "clinical presentation"
4 displayed "almost no insight."[6] (Id., p. 28.) She was dubious about the accuracy of historical
5 information reporting that led to a "moderately low" risk for future violence rating.[7] (Id.) She
6 expressed concern he had not come to terms with "a primary destabilizer" of "relapse into substance
7 abuse," noting that "[d]espite his long-term affiliation with 12-step programming, he has made no
8 plans for this eventuality." (Id.) She suggested he might benefit from "a more intense substance abuse
9 program, since it appeared during the current interview that he has not benefitted from his long-term
10 AA/NA involvement." (Id., p. 31.) She cautioned, however, that any of the self-help suggestions she
11 made "may prove of little value until he is ready to let go of his defensiveness." (Id.)

12 Although Cooley had several certificates of attendance at AA and NA meetings in his file,
13 he was unable at the suitability hearing to recite any of the twelve steps advocated by those programs
14 to help people deal with their addictions, contending that he does not need them because he is not a
15 "drinker." (Dkt No. 11-2, p. 63.) He candidly admitted he only attended meetings "because it's
16 required" and in order to accumulate an attendance record: "I go for the, for the certificates, to be
17 honest with you." (Id..) He had letters of support from family members, but a post-parole job
18 opportunity Cooley represented was awaiting him, based on a then-year-old letter from a relative
19 stating he would hire Cooley into his auto detailing business, proved uncertain after a Board member
20 was unable to get any information on the company and determined the business phone number
21 provided had been disconnected. (Dkt No. 11-2, pp. 67-70, 76-77.) The Board's recommendations

---

[6] "It should be noted that – despite his conviction – he continues to deny the crime and expresses only limited remorse for the victims. Historically and sometimes currently, he has manifested several signs of psychopathology, including," among other listed traits, "pathological lying, manipulativeness, lack of remorse/guilt, . . . poor behavioral controls, . . . and inability to accept responsibility for his own actions." (Dkt No. 11-4, p. 28.)

[7] "Since his incarceration, he has maintained a relatively low profile, with his three 115 violations reflecting two related to substance abuse. Based on the above information, it appeared that Mr. Cooley presented at [*sic*] **moderately low** risk for violence. When this rating was calculated, there was the assumption that historical information was accurately reported; it was the Evaluator's impression that this might be a questionable assumption." (Dkt No. 11-4, p. 28.)

1  to Cooley in denying parole were to "firm up employment plans," "no more 115's or 128's," "get self
2  help," "earn positive chrono's," and "stay discipline-free." (Dkt No. 11-3, p. 32.)

3      According the requisite deference to state court factual determinations mandated by AEDPA,
4  and applying the federal habeas review standard applicable to parole denials for California state
5  prisoners the Ninth Circuit has now clarified, the Court finds the judicial decision "approving the
6  Board's decision rejecting parole" did not entail an unreasonable application of the California "some
7  evidence" standard, nor was it "based on an unreasonable determination of the facts in light of the
8  evidence." Hayward Op. at *11, *quoting* 28 U.S.C. § 2254(d)(1)-(2). As reviewed above, pertinent
9  portions of the evidentiary record support the recited factors and their rational relationship to the
10 determination Cooley would pose an unreasonable risk to public safety if released, validating that
11 result. Accordingly, habeas relief on grounds the Board violated Cooley's due process rights in
12 denying him parole is **DENIED**.

13 **III.    CONCLUSION AND ORDER**

14     For all the foregoing reasons, **IT IS HEREBY ORDERED** Cooley's habeas petition is
15 **DENIED** in its entirety. The Court finds no basis for a certificate of appealability. Judgment shall
16 be entered accordingly.

17     **IT IS SO ORDERED**.

19 DATED: May 18, 2010

21                            HON. DANA M. SABRAW
                           United States District Judge